UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHAEL S.,[1]

                                Plaintiff,                 Case # 21-CV-512-FPG

v.                                                  DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.

## INTRODUCTION

Plaintiff Michael S. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 9, 10. For the reasons that follow, the Commissioner's motion is GRANTED, Plaintiff's motion is DENIED, and the complaint is DISMISSED WITH PREJUDICE.

## BACKGROUND

In February 2019, Plaintiff applied for DIB with the Social Security Administration ("the SSA"). Tr.[2] 93. He alleged disability since December 12, 2018. *Id.* On July 1, 2020, Administrative Law Judge William M. Weir ("the ALJ") issued a decision finding that Plaintiff is

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 6.

not disabled.  Tr. 11-25.  On February 22, 2021, the Appeals Council denied Plaintiff's request for review.  Tr. 1-4.  This action seeks review of the Commissioner's final decision.  ECF No. 1.

## LEGAL STANDARD

### I.      District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted).

### II.     Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id.* § 404.1520(c).  If the

claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.   The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 13. At step two, the ALJ found that Plaintiff has severe impairments of mood

disorder, anxiety disorder, diabetes mellitus, diabetic neuropathy, asthma, lumbar degenerative disc disease, and obesity. *Id.* At step three, the ALJ found that his impairments do not meet or medically equal any Listings impairment. Tr. 14.

Next, the ALJ determined that Plaintiff retains the RFC to perform a reduced range of light work. Tr. 17. At step four, the ALJ found that Plaintiff could not perform any past relevant work. Tr. 24. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. Tr. 24-25. Accordingly, the ALJ concluded that Plaintiff is not disabled. Tr. 25.

## II. Analysis

Plaintiff argues the ALJ's decision is erroneous because (1) the ALJ failed to account for certain limitations identified by consultative examiner Rebecca Billings, Ph.D., (2) the ALJ did not adequately consider Plaintiff's obesity, and (3) the "SSA's structure is unconstitutional as it violates separation of powers." ECF No. 9-1 at 6. The Court discusses each argument in turn.

### a. Opinion of Dr. Billings

On May 7, 2019, Plaintiff met with Dr. Billings for a consultative psychiatric examination. Tr. 366. After the exam, Dr. Billings diagnosed Plaintiff with "[a]djustment disorder with mixed anxiety and depressed mood" and "[r]ule out posttraumatic stress disorder." Tr. 370. She opined that Plaintiff's functional capacity would be limited in several respects, including that Plaintiff was moderately limited in his abilities to "sustain concentration and in performing a task at a consistent pace," as well as in his abilities to and "regulate emotions, control behavior, and maintain well-being." *Id.*

In his decision, the ALJ found Dr. Billings's opinion "partially persuasive." Tr. 22. While crediting much of her evaluation, the ALJ rejected the portion of her opinion finding that Plaintiff

had "moderate limitations in regulating emotions, controlling behavior, and maintaining well-being." *Id.* He found that portion less persuasive because it was "not fully consistent with other evidence in the file." *Id.* Furthermore, "[w]hen also considering [Plaintiff's] ability to engage in a wide variety of activities of daily living, his stable mental status examination findings, and his long work history," the ALJ believed Plaintiff had "no more than mild limitations in his ability to adapt and manage himself." *Id.*

On appeal, Plaintiff argues that the ALJ failed to account for his moderate limitations in "regulating emotions; controlling behavior; and maintaining well-being," as identified by Dr. Billings. ECF No. 11 at 1-2; *see also* ECF No. 9-1 at 4. This argument rests on a misinterpretation of the ALJ's decision. The ALJ did not, as Plaintiff claims, fully credit all of Dr. Billings's limitations, which would have necessitated the inclusion of those limitations. *See* ECF No. 9-1 at 4; *see also Whited v. Comm'r of Soc. Sec.*, No. 19-CV-887, 2020 WL 8675800, at *2-3 (W.D.N.Y. July 23, 2020) (remanding case where ALJ purported to give opinions "great weight" but failed to include "several of the limitations endorsed in those opinions"). Rather, the ALJ expressly found Dr. Billings's opinion "only partially persuasive" in certain respects, and he rejected the three limitations that Plaintiff now highlights. *See* Tr. 22. This was permissible, as an ALJ is "free to credit some portions of opinions and reject others," so long as he possesses "sound reasons for rejecting" those portions.[3] *Jacob M. v. Comm'r of Soc. Sec.*, No. 20-CV-1093, 2022 WL 61007, at *2 (W.D.N.Y. Jan. 6, 2022).

Plaintiff also contends that, despite purporting to credit much of Dr. Billings's opinion, the ALJ erroneously failed to incorporate any restriction into the RFC related to Plaintiff's "moderate limitation[] . . . in performing a task at a consistent pace." Tr. 370; *see also* ECF No. 11 at 2. The

---

[3] Plaintiff does not develop any argument that the ALJ's reasons for giving Dr. Billings's opinion partial credit were erroneous. *See generally* ECF No. 9-1 at 3-4; ECF No. 11 at 1-3.

Court disagrees.  The ALJ limited Plaintiff to unskilled work, and courts in this Circuit have held that "a limitation to unskilled work . . . sufficiently accounts for limitations relating to . . . production pace."[4]  *Tatelman v. Colvin*, 296 F. Supp. 3d 608, 613 (W.D.N.Y. 2017) (collecting cases); *see also, e.g.*, *Robinson v. Comm'r of Soc. Sec.*, No. 16-CV-648, 2018 WL 3583236, at *3 (W.D.N.Y. July 26, 2018) ("[The state agency reviewing psychologist's] opinion that Plaintiff . . . had moderate limitations in maintaining concentration, persistence, or pace is accounted for in the ALJ's limitation to unskilled work."); *Ana H. v. Comm'r of Soc. Sec.*, No. 19-CV-432, 2020 WL 6875252, at *10 (W.D.N.Y. Nov. 23, 2020) ("An RFC for unskilled work is fully consistent with moderate limitations in concentration persistence and pace.").

Finally, Plaintiff asserts that the ALJ "failed to include any limitations as to Plaintiff's ability to adapt and manage himself, despite imposing a mild limitation in this area of functioning." ECF No. 9-1 at 4.  However, a mild limitation in that area does not mandate any corresponding RFC restriction.  *See, e.g.*, *Christian H. v. Comm'r of Soc. Sec.*, No. 20-CV-1490, 2022 WL 3648022, at *4 (W.D.N.Y. Aug. 24, 2022) (collecting cases for the proposition that "if a mental impairment causes only mild limitations that do not result in any functional work-related restrictions, the ALJ does not err by formulating an RFC without mental limitations or restrictions").  Here, the ALJ found that Plaintiff has a mild limitation in adapting or managing himself but that this limitation did not impact his ability to work.  *See* Tr. 16 ("The evidence of record does not show that [Plaintiff] is unable to keep himself safe in a work environment or that

---

[4] Plaintiff points out that, at the hearing, the ALJ did not include a limitation to "unskilled work" in his hypothetical questions to the vocational expert.  *See* Tr. 70-71; *see also* ECF No. 9-1 at 4.  However, the jobs that the vocational expert identified were, in fact, "considered unskilled."  Tr. 71.  Moreover, the ALJ addressed this issue in his decision, writing that "[t]he addition of the limitation to unskilled work does not impact the vocational expert's testimony, as all of the jobs [that the expert] identified have a SVP of 2."  Tr. 25.

he cannot control his behavior in a workplace.").  Plaintiff does not substantively challenge the ALJ's rationale in this respect.  *See* ECF No. 9-1 at 3-5; ECF No. 11 at 1-3.

Accordingly, Plaintiff's arguments related to Dr. Billings's opinion do not merit remand.

### b.  Obesity

Plaintiff asserts that the ALJ failed to adequately consider his obesity and body mass index ("BMI"), insofar as the ALJ did not "explicitly analyze its impact in conjunction with Plaintiff's respiratory and musculoskeletal impairments."  ECF No. 9-1 at 5.  This argument does not warrant remand.  As a general matter, "an ALJ's failure to explicitly address a claimant's obesity does not warrant remand."  *Mota v. Comm'r of Soc. Sec.*, No. 20-CV-7294, 2022 WL 464098, at *12 (S.D.N.Y. Feb. 15, 2022).  Regardless, in his decision, the ALJ expressly discussed Plaintiff's obesity at steps two and three, Tr. 13, 15, and in the RFC discussion, Tr. 18-21.  That the ALJ did not explicitly explain how Plaintiff's obesity affected Plaintiff's other impairments "does not necessarily mean [that the issue] was not considered."  *Mota*, 2022 WL 464098, at *12 (emphasis omitted).  Indeed, the ALJ stated that he did consider the combined effects of obesity and Plaintiff's other impairments.  *See* Tr. 15.

Thus, to show that remand is justified, Plaintiff would need to articulate why the ALJ's evaluation of his obesity was erroneous.  Plaintiff fails to develop any meaningful argument to make that showing.  In his brief, he merely states that "[t]he combination of obesity and musculoskeletal and respiratory impairments would be expected to exert more than a slight limitation in [his] ability to perform work-related activities."  ECF No. 9-1 at 5.  Plaintiff neither marshals any record evidence nor cites any case law to develop that bare proposition into a viable

argument challenging the ALJ's analysis.[5]  The Court is under no obligation to undertake that analysis on Plaintiff's behalf.  *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").  Absent more developed argument, remand is not warranted on this ground.

### c.   Constitutionality of SSA Structure

Citing *Seila Law LLC v. C.F.P.B.*, 140 S. Ct. 2183 (2020), Plaintiff argues that the SSA is structured in an unconstitutional manner, insofar as the SSA's commissioner "can only be removed from his position for cause."  ECF No. 9-1 at 6.  Although Plaintiff presents a question of significant constitutional importance, its resolution under the facts of this case is straightforward.

"Under our Constitution, the executive Power—all of it—is vested in a President, who must take Care that the Laws be faithfully executed."  *Seila Law*, 140 S. Ct. at 2191 (internal quotation marks omitted).  Part of that power is the "power to remove . . . those who wield executive power on [the President's] behalf."  *Id.*  Therefore, "as a general matter," the Constitution gives the President the authority to remove those who assist him in carrying out his duties," since "[w]ithout such power, the President could not be held fully accountable for discharging his own responsibilities."  *Id.*  In *Seila Law*, the Supreme Court held that a statutory removal limitation on the director of the Consumer Financial Protection Bureau ("CFPB")—under which the director was removable only for inefficiency, neglect of duty, or malfeasance in office— violated the separation of powers and was unconstitutional.  *Id.* at 2197, 2206.  In *Collins v. Yellen*, 141 S. Ct. 1761 (2021), the Supreme Court reached the same conclusion with respect to the director

---

[5] The one case that Plaintiff cites, *Atkinson v. Commissioner of Social Security*, No. 18-CV-867, 2020 WL 3511175, at *3 (W.D.N.Y. June 29, 2020), concerned a situation in which the ALJ wholly failed to "address obesity at all" in his decision, which is distinguishable from the present case.

of the Federal Housing Finance Agency, "whom the President could remove only for cause." *Collins*, 141 S. Ct. at 1770; *see also id.* at 1784 ("A straightforward application of our reasoning in *Seila Law* dictates the result here. The FHFA (like the CFPB) is an agency led by a single Director, and the Recovery Act (like the Dodd-Frank Act) restricts the President's removal power.").

The SSA's structure contains a similar defect: it is "headed by a [single] Commissioner of Social Security," who is appointed by the President "for a six-year term," and "may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office." *Betty Jean B. o/b/o L.J.B. v. Kijakazi*, No. 21-CV-125, 2022 WL 873827, at *5 (N.D.N.Y. Mar. 24, 2022) (internal quotation marks omitted). "In the wake of *Seila Law* and *Collins*, many district courts have assumed or held that the restriction on the President's power to remove the Commissioner violates the separation of powers." *Id.*; *see also Kaufman v. Kijakazi*, 32 F.4th 843, 848-49 (9th Cir. 2022) (concluding the removal restriction on the Social Security Commissioner "violates separation of powers principles"). The Commissioner does not dispute this point. *See* ECF No. 10-1 at 6.

There remains the question of remedy, however. Plaintiff argues that the Appeals Council lacked the requisite authority at the time it acted on his request for review. In Plaintiff's view, the Appeals Council derived its authority from Andrew Saul (then the SSA Commissioner), and Commissioner Saul lacked any "constitutionally valid authority." ECF No. 11 at 5. To reach this conclusion, Plaintiff reasons that President Biden "would have fired" Commissioner Saul, an appointee of President Trump, "absent the unconstitutional statutory removal provision," which created a "constitutional defect" in Saul's authority.[6] *Id.* at 5, 8.

---

[6] A few months after the Appeals Council denied Plaintiff's request for review, President Biden did, in fact, remove Commissioner Saul. *See* ECF No. 11 at 5.

To the extent Plaintiff is arguing that Commissioner Saul was somehow stripped of his authority at the moment President Biden assumed office, the Court disagrees. Plaintiff does not dispute that Commissioner Saul and the administrative officials who adjudicated his application were validly appointed. *See* ECF No. 11 at 4. And absent a "constitutional defect in the statutorily prescribed method of appointment to [the relevant] office," there is "no reason to regard any of the actions" taken by the Commissioner or his subordinate administrative officials "as void." *Collins*, 141 S. Ct. at 1787; *see also id.* at 1788 n.24 (rejecting the proposition that "actions taken by [an officer subject to an unconstitutional removal restriction] are void *ab initio* and must be undone"). Rather, as the Supreme Court has held, "the unlawfulness of [a] removal provision does not strip the [official] of the power to undertake the other responsibilities of his office." *Collins*, 141 S. Ct. at 1788 n.23; *see also Kaufmann*, 32 F.4th at 849 (notwithstanding unconstitutional removal provision, SSA's actions on claimant's application were not "void" since "[c]laimant does not dispute that the ALJ, the members of the Appeals Council, Acting Commissioner Berryhill, and Commissioner Saul all served, at all relevant times, under valid appointments").

Instead, for Plaintiff to be entitled to relief, he would need to "show how the unconstitutional removal provision actually harmed" him. *Kaufmann*, 32 F.4th at 849 (emphasis added). Plaintiff does not proffer sufficient allegations, let alone evidence, to make that showing. He identifies no causal connection between Commissioner Saul's retention and the disposition of his case, and he does not claim that a different commissioner appointed by President Biden would have caused a different result. Although Plaintiff alludes to alleged misdeeds committed by Commissioner Saul—his politicization of "Social Security disability benefits," his reduction of due process protections, ECF No. 11 at 6—he does not tie any of those alleged misdeeds to any error or defect in the process he was afforded before the Appeals Council. Ultimately, based on

the record before the Court, Plaintiff's was a run-of-the-mill DIB application, whose result would not have changed even if Commissioner Saul had been removed.  *See Collins*, 141 S. Ct. at 1802 (Kagan, J., concurring in part and concurring in judgment) ("I doubt the mass of SSA decisions— which would not concern the President at all—would need to be undone. . . .  When an agency decision would not capture a President's attention, his removal authority could not make a difference."); *accord Deborah M. v. Kijakazi*, No. 20-CV-1600, 2022 WL 2274780, at *4 (N.D.N.Y. June 23, 2022) ("Without alleging any connection between the removal restriction and the unfavorable decision denying her claim for benefits, the Court [] finds that Plaintiff has not alleged that the unconstitutional removal restriction itself inflicted compensable harm." (internal quotation marks omitted)).

Therefore, the Court declines to grant Plaintiff any relief due to the unconstitutional removal restriction.

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 10) is GRANTED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is DENIED.  The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: October 4, 2022
      Rochester, New York

                                          _____
                                          HON. FRANK P. GERACI, JR.
                                          United States District Judge
                                          Western District of New York